# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| ITS FINANCIAL, LLC, | : | |
| Plaintiff, | : | Case No.  3:10CV0041 |
| vs. | : | District Judge Timothy S. Black |
| | | Magistrate Judge Sharon L. Ovington |
| ADVENT FINANCIAL SERVICES, LLC, *et al.*, | : | |
| | : | |
| Defendants. | | |

## REPORT AND RECOMMENDATIONS[1]

This matter is before the Court upon Defendants' joint motion to transfer venue (Doc. #15); Plaintiff's memorandum in opposition thereto (Doc. #18); Defendants' reply (Doc. #20) and supplemental reply (Doc. #23); and the record as a whole.

## PROCEDURAL HISTORY/THE PARTIES' CLAIMS

On December 31, 2009, Plaintiff ITS Financial, LLC ["ITS"], a company based in Dayton, Ohio, filed a complaint against Defendants Advent Financial Services, LLC ["Advent"] and NovaStar Financial, Inc. ["NovaStar"] in the Court

---

[1]Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

of Common Pleas of Montgomery County, Ohio, seeking damages for claims including breach of contract, fraudulent inducement, and tortious interference with contract.  (*See* Doc. #3).  On January 27, 2010, Defendants removed that action to this Court, invoking federal jurisdiction based upon diversity of citizenship, given Advent's status as a Missouri company and NovaStar's corporate registration in Maryland and place of business in Missouri.  (Doc. #1).

On February 3, 2010, Defendants moved jointly under 28 U.S.C. § 1404(a) to transfer this case to the United States District Court for the Western District of Missouri.  (Doc. #15).  Alleging that their respective principal places of business are in that district; that most "relevant witnesses and other sources of proof" also are located there;[2] that they lack "any significant relationship to Ohio;" that the subject contract "was entered into in Missouri;" and that the subject contract specifies that Missouri law will govern any contract dispute between the parties, Defendants urge that the requested transfer is mandated for the convenience of the parties and witnesses, and in the interests of justice.  (*Id.* at 2).

In opposing the requested transfer, Plaintiff contends that the factors relevant to Defendant's transfer request do not weigh "strongly" in favor of transfer.  (Tr. 18 at 1).  Plaintiff urges, for example, that such considerations as

---

[2]Specifically, Defendants identify five "potential witnesses" employed by Defendants who allegedly "reside and/or work in Kansas City, Missouri."  (Doc. #15 at 9).

2

access to sources of proof, relation of the site to the cause of action, and familiarity with the applicable law do not significantly favor either court over the other. (*Id.* at 6, 8, 10). As to the convenience of witnesses, however, Plaintiff argues that the balance strongly favors Ohio, where at least 10 prospective witnesses reside, and which is significantly closer to one non-party witness residing in Kentucky. (*Id.* at 6-7). Plaintiff thus asserts that the motion to transfer should be denied.

Defendants in reply first contend that Plaintiff already "expressly conceded" through the contract terms that Missouri has a significant interest in the underlying contract, its interpretation, and its enforcement. (Doc. #20 at 1-2). Defendants then enumerate reasons why the proposed Missouri venue purportedly is preferable, including a new allegation that "at least twenty" potential witness "are located in and around Kansas City, Missouri." (*Id.* at 3 & attached Declarations of Bernard Wilson & Rodney Schwatken). Defendants then suggest that their greater number of witnesses who would be inconvenienced by traveling to Ohio for a trial (*see id.*, Wilson Declaration at para. 6, Schwatken Declaration at para. 7) compels transfer to Missouri. (*Id.* at 3).

In their supplemental reply (Doc. #23), filed with leave of this Court (*see* Doc. #21), Defendants also aver that Defendant NovaStar has initiated an action

against two principals of Plaintiff to enforce loan guarantees made in connection with the contract that is the subject of the instant action.  (Doc. #23 at 1-2).  That loan guarantee enforcement action already is pending in the United State District Court for the Western District of Missouri.  *See NovaStar Fin., Inc. v. Ogbazion*, No. 10-CV-00241 (W.D. Mo. 2010) (Doc. #23 at Exh. 1).  Defendants assert that ITS's "express contractual obligation" to litigate its loan obligations in Missouri further supports transfer of this action to the Missouri court.  (Doc. #23 at 2).

This matter now is ripe for resolution.

## APPLICABLE LAW

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  The moving party bears the burden of establishing the need for a transfer of venue.  *Kay v. National City Mortgage Co.*, 494 F.Supp.2d 845, 849-50 (S.D. Ohio 2007) (Rice, J.) (citing *Jamhour v. Scottsdale Ins. Co.*, 211 F.Supp.2d 941, 945 (S.D. Ohio 2002) (Sargus, J.)); *Copeland Corp. v. Choice Fabricators, Inc.*, 492 F.Supp.2d 783, 789-90 (S.D. Ohio 2005) (Rice, J.) (citing, *inter alia*, *Centerville ALF, Inc. v. Balanced Care Corp.*, 197 F.Supp.2d 1039 (S.D. Ohio 2002) (Rice, J.)).

In ruling on a motion to transfer under § 1404(a), a district court "should

consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.' " *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir.), *cert. denied*, 502 U.S. 821, 112 S.Ct. 81 (1991) (citing *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 30, 108 S.Ct. 2239, 2244 (1988)).  Factors to be considered per the Supreme Court's established standards for evaluating the litigants' interests (*i.e.*, the private interests) include the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; the possibility of viewing the subject premises, where appropriate; and all other practical problems that make trial of a case easy, expeditious and inexpensive.  *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n.6, 102 S.Ct. 252, 258 n.6 (1981) (quoting *Gulf Oil v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843 (1947)).  While a plaintiff's choice of forum "is entitled to somewhat less weight when the case is removed to federal court" (from the plaintiff's chosen forum in state court), *Jamhour*, 211 F.Supp.2d at 946-47, the choice of forum still is entitled to <u>some</u> weight, especially if the plaintiff resides within that forum.  *See id.; see also Kay*, 494 F.Supp. 2d at 850.

　　Public interest factors include "[d]ocket congestion, the burden of trial to a

jurisdiction with no relation to the cause of action, the value of holding trial in a community where the public affected live, and the familiarity of the court with controlling law." *Jamhour,* 211 F.Supp.2d at 945 (citing *Gulf Oil,* 330 U.S. at 508-09, 67 S.Ct. at 843).  When all relevant factors are taken into consideration, the balance of convenience "should be <u>strongly</u> in favor of a transfer before such will be granted." *Kay,* 494 F.Supp.2d at 850 (quoting *First Bank of Marietta v. Bright Banc Savings Ass'n,* 711 F.Supp. 893, 896-97 (S.D. Ohio 1988 ) (Graham, J.) (emphasis added)).

Among all these factors, the convenience of witnesses is "of the utmost importance." *Kay,* 494 F.Supp.2d at 852 (citing 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3851) ("Probably the most important factor, and the factor most frequently mentioned, in passing on a motion to transfer under 28 U.S.C. § 1404(a), is the convenience of witnesses."). Additionally, "avoidance of a multiplicity of litigation is an important factor in determining what 'the interests of justice' require." *Id.* at 854 (citing, *inter alia, Continental Grain Co. v. The FBL-585,* 364 U.S. 19, 20-21, 80 S.Ct. 1470, 1471-72 (1960) (finding transfer of case under 28 U.S.C. § 1404(a) to be in "interest of justice" where it would allow two lawsuits arising from single occurrence to be heard in same venue)); *see also Ferens v. John Deere Co.,* 494 U.S. 516, 531, 110 S. Ct.

6

1274, 1284 (1990).

"A change of venue under § 1404(a) generally should be, with respect to state law, but a change in courtrooms." *In re Bendectin Litigation*, 857 F.2d 290, 306 (6th Cir. 1988) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 639, 84 S.Ct. 805, 820-21 (1964)), *cert. denied*, 488 U.S. 1006 (1989). Accordingly, the state law to be applied is not a decisive issue. *See id.*; *see also Lumbermens Mut. Cas. Co. v. SW Industries, Inc.*, 856 F.2d 195 [table], 1988 WL 90871, at *1 (6th Cir. Aug. 31, 1988) (in considering motion to transfer, "the issue of what [state] law governs is not a dispositive factor").

## DISCUSSION

Defendants assert - accurately – that this action could have been brought originally in the United States District Court for the Western District of Kansas. (Doc. #15 at 5-7). Plaintiff does not challenge that assertion regarding the "threshold" issue, *see Kay*, 494 F.Supp.2d at 849, conceding that this action "could have been brought in . . . Missouri" (Doc. #18 at 4), but arguing that "Defendants have not met their burden to clearly demonstrate that the factors 'strongly' weigh in favor of transfer." (*Id.* at 1). As such, the inquiry is limited to whether Defendants have established that "transfer is justified under the balance of the language of § 1404(a)." *See Kay*, 494 F.Supp.2d at 849.

### a) The Interests of Justice/Public Interests Relative to Transfer

Among the "public interest" factors relevant to a transfer of venue request – *e.g.*, "[d]ocket congestion, the burden of trial to a jurisdiction with no relation to the cause of action, the value of holding trial in a community where the public affected live, and the familiarity of the court with controlling law," *see Jamhour,* 211 F.Supp.2d at 945 – the ones most touted by Defendants as weighing in favor of transfer are issues related to the respective courts' relative docket congestion and familiarity with Missouri contract law.[3]  (*See* Doc. #18).

As to the latter, case law in this jurisdiction counsels that a change of venue with respect to the application of state law essentially is just "a change in courtrooms," *see In re Bendectin Litigation,* 857 F.2d 290 at 306, and that Defendants' interest in the application of Missouri law therefore "is not a dispositive factor."  *See Lumbermens Mut. Cas. Co.,* 1988 WL 90871, at *1.  There is no indication here that the state contract law of Missouri is "so unique" that this Court would not be as capable as another federal district court that happens to sit in Missouri of applying that law.  *See Midwest Motor Supply v. Kimball,* 761 F.Supp. 1316, 1319 (S.D. Ohio 1991) (Holschuh, J.) (familiarity with applicable law

---

[3]As to the other two enumerated factors, it is observed that the "no relation" factor is inapposite, as both this District and the Western District of Missouri are home to at least one party with an interest in the outcome of this litigation.  Additionally, neither party has asserted, nor can this Court discern, any particular "value" to "the public" in one such venue over the other as being the situs of a trial in this matter.

does not "strongly militate" for transfer unless law to be applied is "novel or complex").  As such, that factor does not weigh significantly in favor of transfer.

Attached to Defendants' supporting memorandum is documentation purporting to show that in 2008, "the median time from filing to trial in civil cases was 29.5 month in the Western District of Missouri," while the corresponding time was 36.0 months in this Court.  (Doc. #15 at 11 & attached Declaration of Brian J. Christensen, Esq., at para. 4-6 & at Exh. B).  Defendants proffer this as evidence that the Missouri court provides an advantage re the "docket congestion" factor.

Accepting that statistical compilation as true, this Court nonetheless does not agree that such evidence "strongly" favors the transfer Defendant requests.  Even assuming that those time-to-trial differences could be deemed statistically significant, statistics from 2008 do not necessarily reflect the relative docket congestion currently experienced by the respective courts, nor do those numbers take into account the relative complexity of cases or relative caseloads of individual judges, factors that could impact significantly the length of time before a particular case reaches trial.  Moreover, as Plaintiff aptly observes, the length of time from filing to trial arguably is not as direct a measure of "docket congestion" as is the number of case filings per judge – a consideration which,

according to Plaintiff, showed that judges in this Court carried a slightly lighter burden in 2008 than did those in the Western District of Missouri.  (*See* Doc. #18 at 8).  Notwithstanding Defendants' expressed concern for "exacerbating what appears to be an already overburdened court docket within the Southern District of Ohio" (Doc. #15 at 11), this Court finds that the "docket congestion" factor does not "strongly" favor transfer.  *See Kay*, 494 F.Supp.2d at 850.  Accordingly, the Court concludes that consideration of the "public interest" factors as a whole does not demonstrate that a change to the requested venue is warranted.

**b) Private Interests Relative to Transfer**

The Court also must consider, however, the "private interests" implicated by Defendants' motion to transfer – *i.e.*, the convenience of the parties and potential witnesses; the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses.  *See Piper Aircraft Co.*, 454 U.S. at 241 n.6, 102 S.Ct. at 258 n.6; *Moses*, 929 F.2d at 1137.

As to the convenience of the <u>parties</u> in this case, the parties' dueling allegations suggest that transfer to Missouri would accomplish little other than substituting Defendants' convenience for that of Plaintiff.  Indeed, because Plaintiff's principal place of business lies within this district, Plaintiff's decision

10

to pursue this action in Ohio is entitled to some weight, notwithstanding its choice of the state court rather than this Court as its preferred forum. *See Jamhour*, 211 F.Supp.2d at 946-47; *Kay*, 494 F.Supp. 2d at 850.[4] On balance, then, the parties' convenience would seem to tilt slightly toward Plaintiff's choice of Ohio. Transfer thus is not warranted on the basis of the parties' convenience.

Similarly, Defendants' assertion that "[a]ll of the documentation in [their possession] that contains information related to . . . this lawsuit is located in Kansas City, Missouri" (Doc. #15 at 4 & attached Wilson Declaration at para. 20) does not compel transfer for purposes of access to sources of proof, given that "Plaintiff's documents are stored in Ohio" (Doc. #18 at 4 & attached Affidavit of Fesum Ogbazion at para. 11), as well as Plaintiff's uncontested representation that "[t]he main sources of proof in this case will be documents and emails[ . . .] readily transportable by electronic means." (*Id*.). There is no credible contention of a need to view any premises or that the sheer volume of physical evidence at a particular site merits holding the trial in one location rather than the other. This factor, then, is immaterial.

More significant, however, is the "utmost importan[t]" issue of the

---

[4]Although Defendants correctly note that Plaintiff's choice "is not entitled to the substantial weight it otherwise might receive" (Doc. #15 at 7) (quoting *Jamhour, supra*), it does not follow that Plaintiff's desire to stay in Ohio is entitled to no deference. (*See id*.).

convenience of potential witnesses.  *See Kay*, 494 F.Supp.2d at 852.  Although

Defendants originally identified five "potential witnesses" who "reside and/or

work in Missouri" (Doc. #15 at 9 & attached Wilson Declaration at para. 18), their

reply memorandum revised that number to "at least twenty (20) . . . Kansas City-

based witnesses, and probably more."  (Doc. #20 at 3 & attached Wilson

Declaration at para. 4-5, attached Schwatken Declaration at para. 4-5).  The

context in which Defendants make that revised assertion, however, suggests that

Defendants broadened the scope of their prospective witness pool in order to

exceed the 10 Ohio-based witnesses and one Kentucky-based witness identified

in Plaintiff's opposing memorandum.  (Doc. #18 at 6 & attached Ogbazion

Affidavit at para. 9-10); (*see* Doc. #20 at 3) (asserting that "there are more than

twice as many witness" now identified by Defendants as "Kansas City-based" as

there are Ohio-based witnesses identified by Plaintiff) (emphasis in original).

   Skepticism about the reliability of the parties' respective witness numbers

aside, those numbers alone are not the only important consideration.  The Court

also must consider the possible necessity for and cost of compelling non-party

witnesses to attend trial.  *See Piper Aircraft Co.*, 454 U.S. at 241 n.6, 102 S.Ct. at 258

n.6; *Moses*, 929 F.2d at 1137.  Here, all 20-plus witnesses alluded to in Defendants'

reply are alleged to be "associated with" Defendants as "employees" or

"representatives" of those companies.  (*See* Doc. #20, attached Wilson Declaration

at para. 4-5 & attached Schwatken Declaration at para. 4-5).  Nowhere do

Defendants imply that any such individuals may be unwilling witnesses or that

compulsory process may be necessary in order to secure their attendance.  (*See*

Doc. ##15, 20).  Conversely, Plaintiff explicitly alleges that some of its proposed

witnesses are "former employees" (Doc. #18 at 6), and that at least three other

witnesses "are not employees of . . . or otherwise affiliated with either party."

(*Id.*, attached Ogbazion Affidavit at para. 10).  Plaintiff further avers that "it

would be significantly less burdensome" for at least two of those "third party

witnesses with no interest in th[is] lawsuit" to attend trial in Ohio rather than in

Missouri.  (*Id.*).  Recognizing again that the convenience of witnesses is "of the

utmost importance," *see Kay*, 494 F.Supp.2d at 852, the Court must conclude that

the "private interest" factors also seem to weigh slightly in favor of retaining this

case in Ohio, and certainly do <u>not</u> weigh "strongly" in favor of transfer of this

action to the United States District Court for the Western District of Missouri.  *See*

*Kay*, 494 F.Supp.2d at 850.

In one final effort to convince this Court that transfer is warranted,

Defendants in their supplemental reply memorandum advise this Court of the

pendency in the Western District of Missouri of an action brought by Defendant

NovaStar against two of Plaintiff's principals, purportedly to enforce loan guarantees related to the very contract at issue in Plaintiff's action in this Court. (*See* Doc. #23).  As in their original supporting memorandum and first reply, Defendants reiterate their argument that Plaintiff ITS, as well as its principals, "expressly submitted to the jurisdiction" of Missouri's state and federal courts. (*Id.* at 1-2; *see also* Doc. #15 at 8-9; Doc. #20 at 1-3).

It is worthy of note that nowhere in this litigation has Plaintiff denied that it would be subject to the jurisdiction of the United States District Court for the Western District of Missouri if this action were brought in that forum.  (*See* Doc. #18).[5]  That, however, is not the question before this Court.  Rather, on a motion brought under 28 U.S.C. § 1404(a), this Court is to determine only whether the moving party has shown that balancing "the convenience of the parties and witnesses, in the interest of justice," *see id.*, weighs "<u>strongly</u> in favor of a transfer."  *See Kay*, 494 F.Supp.2d at 850 (emphasis added).

The fact that Defendant NovaStar's action now is pending in the Western District of Missouri still does not enable Defendants to make the requisite

---

[5]Plaintiff does contest Defendants' assertion that Plaintiff has "50 offices within the state of Missouri, and no fewer than 10 business locations in the greater Kansas City, Missouri area" (Doc. #15 at 9), arguing that such entities are operated by "independent franchisees" and not ITS itself.  (Doc. #18 at 3).  Plaintiff nevertheless admits that this case "has sufficiently substantial contacts with both states" to "have been brought in either Ohio or Missouri."  (Doc. #18 at 4).  In light of that concession, the Court declines to undertake a detailed analysis of the contentions regarding each party's contacts with the jurisdiction in which it does not reside.

showing.  As Plaintiff aptly notes, despite contract language delineating that agreement's substantial contacts with Missouri and providing a Missouri choice of law clause, "the Agreement does <u>not</u> contain a forum selection clause."  (Doc. #18 at 3) (emphasis in original).  Indeed, Plaintiff urges that it expressly "refused to have Missouri as the exclusive forum," and that the parties therefore "agreed to remove [a] forum selection clause" that had been proposed in the original draft of that agreement.  (Doc. #18 at 3 & attached Ogbazion Affidavit at para. 8).  Although Defendant counters that the absence of a forum selection clause is irrelevant because "the relevant inquiry is limited to the four corners of the contract" and "[t]he language of the contract overwhelmingly supports transfer" (Doc. #20 at 2, n.1), Defendant's motion here is not one to enforce a contract provision, and this Court's task in this instance is not one of contract interpretation.[6]  Accordingly, instead of being bound by principles of contract interpretation, the Court is guided by "the convenience of the parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).

Plaintiff's alleged refusal to agree to a contract clause providing that Missouri would be the presumptive venue of choice is entirely consistent with

---

[6]Nevertheless, it is noted for the record that the deletion of language contained in earlier drafts of a contract may be relevant as to the parties' intent, even under Missouri contract law. *See, e.g., Black & veatch Corp. v. Wellington Syndicate*, 302 S.W. 114, 126 (Mo. Ct. App. 2009).

Plaintiff's argument here, objecting that proceeding in Missouri would cause substantial inconvenience to both Plaintiff and its witnesses.  Where the parties seeking transfer themselves created any "multiplicity of litigation" by filing their action in a different court after Plaintiff's action already was pending elsewhere, this Court does not believe that case law suggesting that a single venue promotes "the interests of justice" can be applied so as to reward Defendants' actions.  *See, e.g., Kay*, 494 F.Supp.2d at 854; *Ferens*, 494 U.S. at 531.  Defendant NovaStar's decision to bring its own cause of action in the Missouri federal district court where its principal place of business is located does not alter the balance of conveniences, and NovaStar's *post hoc* action to that effect should not be used to deny Plaintiff the same right to pursue the cause of action it previously filed in a forum more convenient to it.  Defendants have failed to sustain their burden of showing that weighing the relevant factors results in a balance "strongly" favoring transfer.  *See Kay*, 494 F.Supp.2d at 850.

## IT THEREFORE IS RECOMMENDED THAT:

      1.     Defendants' Joint Motion to Transfer (Doc. #15) be DENIED.


August 23, 2010                               s/Sharon L. Ovington
                                         Sharon L. Ovington
                           United States Magistrate Judge

## <u>NOTICE REGARDING OBJECTIONS</u>

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen (17) days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).